UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHERRI HANSEN, et al.,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. BANK, NATIONAL ASSOCIATION, TRUSTEE OF THE MANUFACTURED HOUSING CONTRACT SENIOR/SUBORDINATE PASS-THROUGH CERTIFICATES, SERIES 1998-8 TRUST; GREEN TREE FINANCIAL SERVICING, LLC; AND HAWLEY TROXELL ENNIS & HAWLEY LLP.,<br><br>    Defendants. | Case No. 4:15-cv-00085-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court is Defendants U.S. Bank and Green Tree Servicing's Motion to Dismiss (Dkt. 7), as well as Defendant Hawley Troxell's Motion for Summary Judgment (Dkt. 11). The Court heard oral argument on August 13, 2015 and granted both motions from the bench. The Court then indicated it would issue a written decision in accordance with its oral ruling, which it does so now.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND[1]

In September of 1998, Plaintiff Sherri Hansen was conveyed a piece of property located at 580 North Highway 33 in Driggs, Idaho (the "Property"). *HT's SoF*, ¶ 1, Dkt. 11-5. That same day, Hansen transferred all of her interest in the Property to non-party Edward T. Rodman. *Id.* at ¶ 2. About a month later, Rodman obtained a loan by way of a promissory note ("Promissory Note") from Defendant Green Tree Servicing LLC ("Green Tree Loan").[2] To secure the obligations under the Green Tree Loan, Rodman recorded a Deed of Trust, which granted and perfected a security interest in the Property to Green Tree. *Id.* at ¶ 4. The Deed of Trust was recorded as Instrument No. 131915 in Teton County, Idaho on October 29, 1998. *Id.*; *see also HT's Ex. C*, Dkt. 11-2 ("Deed of Trust"). Nine years later, Rodman executed a Quitclaim Deed, where he quitclaimed the Property to Hansen, which was recorded as Instrument No. 193352 on November 16, 2007. *HT's Ex. E*, Dkt. 11-2.

Green Tree's interest in the Property was later assigned to Defendant U.S. Bank, N.A., the Trustee on Behalf of Manufactured Housing Contract Senior/Subordinate Pass-

---

[1] These facts are taken almost exclusively from Defendant Hawley Troxell's Statement of Facts, which was submitted in conjunction with its Motion for Summary Judgment, as required by Local Rule 7.1(c)(2). *See HT's SOF*, Dkt. 11-5. Hansen failed to comply with Local Rule 7.1(c)(2) because she did not submit a separate statement of material facts. When a party fails to address another party's assertion of fact as required, the Court "may consider the uncontested material facts as undisputed for purposes of consideration of the motion . . ." Dist. Idaho Loc. Civ. R. 7.1(e)(2). As permitted by Local Rule 7.1(e)(2), the Court will treat Hawley Troxell's version of material facts as uncontested, and thus, undisputed for purposes of considering the motion for summary judgment.

[2] Green Tree Servicing LLC was formerly known as Conseco Financing Group, as well as Green Tree Financial Servicing Corporation. *HT's SoF*, ¶ 3, Dkt. 11-5.

Through Certificate Trust 1998-8 (the "Trust"), by and through its servicer Green Tree Servicing LLC, and pursuant to an Assignment of Deed of Trust recorded on September 24, 2012, as Instrument No. 224141 in Teton County, Idaho. *HT's SoF*, ¶ 5, Dkt. 11-2.

Thereafter, Rodman defaulted on the Green Tree Loan, and the Trust commenced foreclosure proceedings against the Property. *Id*. at ¶ 7. After the Trustee's sale of the Property was postponed numerous times, it finally took place on September 24, 2013. *Id*. at ¶ 14. At the Trustee's Sale, the Trust purchased the Property. *Id*. On September 26, 2013, Hawley Troxell, then-counsel for U.S. Bank, sent a letter to Hansen's counsel, Troy Rasmussen, demanding that Hansen vacate the Property so that the Trust would not have to proceed with an eviction action. *Id*. Hansen never responded to that letter and refused to vacate the Property.

The Trust filed a complaint for ejectment, trespass, and quiet title against Hansen on November 5, 2013 in the District Court of the Seventh Judicial District of the State of Idaho, in and for the County of Teton ("Eviction Action"). *Id*. at ¶ 17. The Eviction Action was stayed when Hansen, represented by a different attorney, Aaron Tolson, filed a second Chapter 13 Voluntary Petition in the U.S. Bankruptcy Court, District of Idaho. Hansen later filed a motion to voluntarily dismiss the bankruptcy petition and it was dismissed on May 9, 2014, which allowed the Eviction Case to move forward. *Id*. at ¶ 18. The Trust thereafter moved for summary judgment in the Eviction Case, and hearing was set for October 7, 2014.

At the close of the hearing, the state court issued an oral decision, granting summary judgment in the Trust's favor as to all three of its claims: ejectment, trespass,

MEMORANDUM DECISION AND ORDER - 3

and quiet title. *Id.* at ¶ 26. On October 28, 2014, the state court entered an Order Granting Summary Judgment and Judgment. *See HT's Ex. MM*, pp. 52–54, Dkt. 11-4. In its order, the state court found in part:

> Finally, the Plaintiff is entitled to summary judgment on its quiet title claim. The Plaintiff and the trustee under the subject deed of trust complied with all of the statutory requirements for a valid non-judicial foreclosure sale, pursuant to Idaho Code § 45-1506. The Plaintiff purchased the Property at the non-judicial foreclosure sale and, thus, is the owner of the Property. As the owner of the Property, the Plaintiff is entitled to quiet title to the Property.

*Id.* at p. 53.

Hansen never appealed the state court's grant of summary judgment. *HT's SoF*, ¶ 28, Dkt. 11-2. However, on November 4, 2014, Hansen filed a Motion for Stay of Execution of Summary Judgment; Motion for New Trial; Motion to Set Aside Summary Judgment; and Motion to Grant Summary Judgment in Favor of Defendant ("Post-Judgment Motion"). *Id.* at ¶ 29. Generally, Hansen's Post-Judgment Motion was based on her argument that the Trust did not have standing to proceed with the foreclosure of the Property. *Id.* The Trust filed an opposition to the Post-Judgment Motion, a hearing was held, and the state court took the matter under advisement. *Id.* at ¶ 31. On January 23, 2015, the state court denied Hansen's Post-Judgment Motion. *Id.* at ¶ 32. Hansen did not appeal the state court's denial of her Post-Judgment Motion. *Id.*

Hansen filed her complaint in the instant action on March 13, 2015. *Id.* at ¶ 34.

## LEGAL STANDARD

### A. Standard of Review for Rule 12(b)(6) Motions

**MEMORANDUM DECISION AND ORDER - 4**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1965. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc*., 375 F.3d 861, 866 n. 1 (9th Cir.2004). The Court may also examine documents referred to in the complaint,

**MEMORANDUM DECISION AND ORDER - 5**

although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

### B.  Standard of Review for Summary Judgment Motions

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  There must be a genuine dispute as to any *material* fact—a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255.  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

**MEMORANDUM DECISION AND ORDER - 6**

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076.  The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted).   Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## ANALYSIS

In her Complaint, Hansen alleges the following ten causes of actions against each Defendant: (1) a violation of the Fair Debt Collection Practices Act ("FDCPA"); (2) a violation of the Idaho Consumer Protection Act ("ICPA"); (3) quiet title; (4) an action for declaratory relief; (5) a claim for a preliminary and permanent injunction; (6) cancellation of a written instrument; (7) unjust enrichment; and (8)–(10) clouding of title claims.

**MEMORANDUM DECISION AND ORDER - 7**

*Compl.*, pp. 23–34, Dkt. 1. As the Court indicated at the close of oral argument, Hansen's first two claims fail as a matter of law, while her remaining claims fail under the principle of *res judicata*. The Court's rationale is explained below.

### A. Hansen's FDCPA claim fails as a matter of law.

The Fair Debt Collection Practice Act was enacted "to counter the abusive, deceptive and unfair debt collection practices sometimes used by debt collectors against consumers." *Turner v. Cook*, 362 F.3d 1219, 1226 (9th Cir. 2004). "Because not all obligations to pay are considered debts under the FDCPA, a threshold issue in a suit brought under the Act is whether or not the dispute involves a 'debt' within the meaning of the statute." *Id.* at 1226–27. A "debt" is defined as "any obligation . . . of a *consumer* to pay money arising out of a *transaction* in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ." *Id.* at 1227 (quoting 15 U.S.C. § 1692a(5)) (emphasis added). A "consumer" is "any natural person obligated . . . to pay any debt." 15 U.S.C. § 1692a(3). While the FDCPA does not define "transaction," the Ninth Circuit has explained that "the consensus judicial interpretation is reflected in the Seventh Circuit's ruling that the statute is limited in its reach 'to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services." *Turner*, 362 F.3d at 1227 (quoting *Bass v. Stolper, et. al.*, 111 F.3d 1322, 1326 (7th Cir. 1997)). Finally, "[w]hether a statute applies is a matter of law." *White v. Mock*, 140 Idaho 882, 891, 104 P.3d 356, 365 (2004).

Here, Hansen is not a "consumer" as defined by the FDCPA because she was not obligated to pay any "debt" to any of the Defendants. Only Rodman, per the Promissory Note, was obligated to pay U.S. Bank, through Green Tree. Hansen did not sign the Promissory Note and has not produced any other note or written instrument that obligates her to pay any money to the Defendants. Additionally, there was no transaction between Hansen and any of the Defendants. Because Hansen is not a consumer under the FDCPA, and because there was no transaction between her and any of the Defendants, there can be no "debt" here. As such, the FDCPA is inapplicable as a matter of law and Hansen's claim fails.

Hansen's FDCPA claim also fails for another reason as against Hawley Troxell. A claim brought under the FDCPA must be brought "within one year from the date on which the violation occurs." 28 U.S.C. § 1692k(d). Hansen alleges the Defendants violated the FDCPA in multiple instances, all of which took place during the time leading up to the foreclosure of the Property. *See Compl.* ¶ 112, Dkt. 1. The foreclosure took place on September 24, 2013. *HT's MSJ Brief*, p. 11, Dkt. 20. The Complaint in the instant case was filed on March 13, 2015. Under any calculation, Hansen's FDCPA claim against Hawley Troxell[3] is time-barred.

**B.    Hansen's ICPA claim fails as a matter of law.**

---

[3] The statute of limitations would bar Hansen's FDCPA claim against U.S. Bank and Green Tree as well; however, they did not make this argument to the Court. Thus, the Court declines to consider it as to these other two parties. Regardless, though, Hansen's FDCPA claim as against U.S. Bank and Green Tree fails for the other reasons discussed above.

**MEMORANDUM DECISION AND ORDER - 9**

The Idaho Consumer Protection Act was enacted "'to protect both consumers and businesses against unfair methods of competition and unfair and deceptive practices in the conduct of trade or commerce, and to provide efficient and economical procedures to secure such protection.'" *White*, 140 Idaho at 890, 104 P.3d at 364 (quoting I.C. § 48-601). It is well-established that "[i]n order to have standing under the [ICPA], the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfairly or deceptively." *Taylor v. McNichols*, 149 Idaho 826, 846, 243 P.3d 642, 662 (2010).

Here, no contractual relationship currently exists, or ever existed, between Hansen and any of the Defendants and Hansen therefore lacks standing to assert an ICPA claim. Hansen's claim under the ICPA therefore fails as a matter of law.

### C.    Hansen's remaining claims are barred by *res judicata*.

The doctrine of *res judicata* mandates that Hansen's remaining claims must fail. "[A] federal court sitting in diversity must apply the res judicata law of the state in which it sits." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982). In Idaho, *res judicata* consists of both claim preclusion and issue preclusion. *Hindmarsh v. Mock*, 138 Idaho 92, 94, 57 P.3d 803, 805 (2002). Claim preclusion generally means that "a valid final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties upon the same claim." *Id*.

It is well-settled that in order for claim preclusion to bar litigation, the following requirements must be met: (1) the same claim or cause of action arising out of the same facts must be involved in both suits; (2) there must be a final judgment on the merits in

**MEMORANDUM DECISION AND ORDER - 10**

the prior action; and (3) the parties in the instant action must be the same as or in privity with the parties in the prior action in question. *See Aldape v. Atkins*, 105 Idaho 254, 256, 668 P.2d 130, 132 (Ct.App. Idaho 1983); *Magic Valley Radiology, P.A. v. Kolouch*, 123 Idaho 434, 437, 849 P.2d 107, 110 (1993). In its application, claim preclusion conserves judicial resources, protects litigants from multiple lawsuits, and fosters certainty while minimizing the risk of inconsistent decisions. *Montana v. United States*, 440 U.S. 147, 153–54, (1979). It is undisputed that there has been a final judgment on the merits in the Eviction Case. As discussed below, the Court finds the remaining two elements are satisfied as well.

Regarding the first element, claim preclusion bars claims actually made as well as "every matter which might and should have been litigated in the first suit." *Magic Valley,* 123 Idaho at 437, 849 P.2d at 110 (internal quotations and citations omitted). Essentially, a valid, final judgment in another proceeding "extinguishes all claims arising out of the same transaction or series of transactions out of which the cause of action arose." *Id.* (quoting *Diamond v. Farmers Group, Inc.,* 119 Idaho 146, 150, 804 P.2d 319, 323 (1990)). Whether the claims asserted in the second action arose out of the same transaction or series of transactions that gave rise to the first action is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (quoting *Aldape v. Atkins,* 105 Idaho 254, 259, 668 P.2d 130, 135 (Ct.App. 1983)).

**MEMORANDUM DECISION AND ORDER - 11**

Hansen fails to explain why claim preclusion does not bar her state-based claims. She asserts unpersuasively that neither *res judicata* nor the *Rooker-Feldman* doctrine[4] apply because Hansen has "alleged new claims under the FDCPA and the [ICPA], and shown facts that support extrinsic fraud in the State Court." *Pl.'s Response*, at pp. 16–17, Dkt. 15. But as the Court explained above, Hansen's claims under the FDCPA and the ICPA fail as a matter of law. Hansen's bare assertion that "Petitioners are alleging extrinsic fraud in the State Court action" goes unexplained and appears to be an ill-conceived attempt to get around the *Rooker-Feldman* doctrine, which "does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud." *Kougasian v. TMSL Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004).

In sum, Hansen's remaining claims—quiet title; an action for declaratory relief; a claim for a preliminary and permanent injunction; cancellation of a written instrument; unjust enrichment; and three clouding of title claims—all arise out of the same transaction addressed in the state court action. The transaction giving rise to all of these claims is, of course, the foreclosure on the Property. In the Eviction Action, the court found that the Trustee's sale of the Property was valid, the Trust has quiet title to the

---

[4] All Defendants also assert that the *Rooker-Feldman* doctrine bars Hansen's claims. Generally, *Rooker-Feldman* prohibits federal district courts from exercising appellate review over final state court judgments. Because the Court finds that Hansen's FDCPA and ICPA claims fail as a matter of law, and that *res judicata* bars her remaining state claims, the Court need not consider whether the *Rooker-Feldman* doctrine would also preclude those same claims.

**MEMORANDUM DECISION AND ORDER - 12**

Property, and that Hansen has no estate, right, title, lien, or other interest in the Property. *HT's Reply*, p. 16, Dkt. 11-1. The first element of claim preclusion is satisfied because Hansen's remaining claims in this proceeding arose out of the very same facts involved in the Eviction Action.

As to the third and final element, the parties in the instant action are either the same, or are in privity with one another. In the Eviction Action, the parties were Hansen and U.S. Bank, who was represented by Hawley Troxell. Green Tree was not a named plaintiff in the Eviction Case; however, U.S. Bank filed its complaint on behalf of the Trust, "by and through Green Tree Servicing LLC . . . as servicer with delegated authority under the transaction documents." *HT's Ex.* V, p. 94, Dkt. 11-3.

In *Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 322 F.3d 1064, 1081–82 (9th Cir.2003) the court set forth a concise summary of when privity exists:

> Even when the parties are not identical, privity may exist if "there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest." *In re Gottheiner,* 703 F.2d 1136, 1140 (9th Cir.1983) (citation omitted); see also *Stratosphere Litigation,* 298 F.3d at 1142 n. 3 (finding privity when a party is "so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved") (citation omitted); *Shaw v. Hahn,* 56 F.3d 1128, 1131–32 (9th Cir.1995) (finding privity when the interests of the party in the subsequent action were shared with and adequately represented by the party in the former action); *United States v. ITT Rayonier, Inc.,* 627 F.2d 996, 1003 (9th Cir.1980) ("[A] 'privy' may include those whose interests are represented by one with authority to do so."). We made clear, in *In re Schimmels,* that privity is a flexible concept dependent on the particular relationship between the parties in each individual set of cases:

**MEMORANDUM DECISION AND ORDER - 13**

> Federal courts have deemed several relationships "sufficiently close" to justify a finding of "privity" and, therefore, preclusion under the doctrine of res judicata: "First, a non-party who has succeeded to a party's interest in property is bound by any prior judgment against the party. Second, a non-party who controlled the original suit will be bound by the resulting judgment. Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit." In addition, "privity" has been found where there is a "substantial identity" between the party and nonparty, where the nonparty "had a significant interest and participated in the prior action," and where the interests of the nonparty and party are "so closely aligned as to be virtually representative." Finally, a relationship of privity can be said to exist when there is an "express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues."

*In re Schimmels,* 127 F.3d 875, 881 (9th Cir. 1997) (citations omitted).

The Court finds that Green Tree, as the loan servicer, is in privity with U.S. Bank. Rodman originally obtained a loan, secured by the Promissory Note, from Green Tree Servicing. Green Tree's interest in the Property was later assigned to U.S. Bank, and Green Tree continued to service the Green Tree Loan. The Green Tree Loan was a Trust asset that U.S. Bank held title to. As such, Green Tree's interests were adequately represented by U.S. Bank in the original suit. In sum, there is "substantial identity" and sufficient commonality of interest between Green Tree and U.S. Bank to establish privity. The question remains whether Hawley Troxell is in privity with U.S. Bank.

Several courts have held that an attorney-client relationship establishes privity for purposes of establishing the third element of *res judicata*. *See Weinberger v. Tucker*, 510 F.3d 486, 493 (4th Cir. 2007); *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986) ("Even though the Bank was the only actual party to the state court mortgage foreclosure

**MEMORANDUM DECISION AND ORDER - 14**

proceedings, the other defendants, as directors, officers, employees, and attorneys of the Bank, are in privity with the Bank for purposes of *res judicata*."). While privity does not automatically exist with respect to every attorney-client interaction (*Weinberger*, 510 F.3d at 493), when a law firm defendant appears in a subsequent action "by virtue of their activities as representatives" of a party in a prior action, privity exists. *Plotner* 224 F.3d at 1169. Because Hawley Troxell appears in this action solely by virtue of their activities as counsel for U.S. Bank in the Eviction Case, the two are privies.

Because all three elements of claim preclusion are satisfied here, Hansen's remaining claims were extinguished in the Eviction Action.

Finally, it should be noted that a dismissal under a 12(b)(6) motion to dismiss is proper only if it is beyond doubt that the complaint cannot "be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). Generally, leave to amend should be granted "even if no request to amend the pleading was made, unless [the court] determines that the pleading could not possible be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). In this case, any amendment would be futile. Even if Hansen alleged additional facts demonstrating that there was a "debt" under the FDCPA, her FDCPA claim is nonetheless barred by the statute of limitations. Hansen's FDCPA claim is the only federal claim she alleges. By dismissing the only claim over which the Court has original jurisdiction, the Court could—and would—decline to exercise supplemental jurisdiction over Hansen's state claims, again assuming that Hansen could assert new facts that would cure her complaint

**MEMORANDUM DECISION AND ORDER - 15**

as to those claims. *See* 28 U.S.C. § 1367(c)(3). In short, because new facts will not change the application of the statute of limitations, which bars Hansen's sole federal claim, any subsequent amendment would be unsuccessful. Therefore, Hansen's complaint is dismissed with prejudice.

## ORDER

**IT IS ORDERED:**

1. Defendants U.S. Bank and Green Tree Servicing's Motion to Dismiss (Dkt.7) is **GRANTED**.

2. Defendant Hawley Troxell's Motion for Summary Judgment (Dkt.11) is **GRANTED**.

3. The Court will issue a separate judgment in accordance with Federal Rule of Civil Procedure 58.

DATED: September 4, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court